ROSE CATANZARITE & another[1] *vs.* CITY OF SPRINGFIELD. No. 91-P-582. May 28, 1992. *Negligence*, Municipality. *Municipal Corporations*, Liability for tort. *Statute*, Construction. *Words*, "Recreation."

The plaintiff Rose Catanzarite was injured at Forest Park, a free public park and recreational area maintained by the city of Springfield, when a segment of wrought iron fence surrounding dinosaur tracks collapsed, cutting her foot. The complaint originally was based on negligence. The city invoked G. L. c. 21, § 17C, which is applicable to municipalities (*Anderson v. Springfield*, 406 Mass. 632 [1990]) and which, in general, exempts an owner of land who permits the public to use the land for recreational purposes without charge from negligence-based liability to persons injured while using the land for those purposes. (The owner is not exempted from liability for injuries resulting from the owner's wilful, wanton, or reckless conduct.) The plaintiffs then amended the complaint to allege wanton or reckless conduct. The case was put to the jury on special questions: Was Rose Catanzarite using the land for recreational purposes? Yes. Was the city negligent? Yes. Was the city's conduct wilful, wanton, or reckless? No. On these answers the judge entered a judgment for the city, and the plaintiffs appealed.

The plaintiffs' position on appeal has two facets: first, that Rose Catanzarite could not as matter of law be found to have been using the land for recreational purposes; second, that the statute should be read only to apply where there is "some causal relationship between the recreational use and how the person is injured." Neither argument has merit. "Recreation" in its most natural signification means "refreshment of strength and spirits after work; . . . a means of refreshment or diversion." Webster's New Collegiate Dictionary 966 (1977). This would include not only the active pursuits (playing baseball and the like) to which the plaintiffs would apparently confine its meaning but also passive pursuits, such as *watching* baseball, strolling in the park to see animals, flowers, the landscape architecture, or other sights, picnicking, and so forth; there is no tenable line that would exclude the reviewing of exhibits such as dinosaur tracks. The second argument flies in the face of the plain words of the statute: "shall not be liable to any member of the public who uses said land for [recreational] purposes for injuries . . . sustained by him while on said land in the absence of wilful, wanton or reckless conduct by such owner . . . ." G. L. c. 21, § 17C, as inserted by St. 1972, c. 575. Nothing in that language limits the application of the statute by the manner in which the injuries are sustained.

The plaintiffs cite in support of their position *Ferres v. New Rochelle*, 68 N.Y.2d 446, 452 (1986), in which it was held that the New York Legislature's purpose in enacting a statute somewhat similar to § 17C was "to

---

[1]Joseph P. Catanzarite, the husband of Rose Catanzarite, suing for loss of consortium.

encourage landowners to allow their properties to be used by the public for [certain enumerated activities, such as hunting, fishing, hiking]" and that the statute was not meant to apply to municipal parks where the city "has already encouraged public use and assumed the duty of reasonable care in the operation of its park . . . ." That decision is not a safe guide to construing § 17C, both because our statute is broader (in that it encompasses all recreational activities), and because, reading § 17C together with G. L. c. 258, § 2, the Supreme Judicial Court has held that municipalities under our statutory scheme "are to be liable 'in the same manner and to the same extent as a private individual under like circumstances.' " *Anderson v. Springfield*, 406 Mass. at 634, quoting from § 2, as inserted by St. 1978, c. 512, § 15. The judge correctly applied the Massachusetts statute.

*Judgment affirmed.*

*Gary B. Liquori* for the plaintiffs.
*John T. Liebel*, Assistant City Solicitor, for the defendant.

